**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CITY OF SYRACUSE,**

                             **Plaintiff,**

   vs.                                                5:11-cv-00744
                                                           (MAD/GHL)

**LOOMIS ARMORED US, LLC,**

                             **Defendant.**
_____

**APPEARANCES:**                                        **OF COUNSEL:**

**CITY OF SYRACUSE**                     **JAMES P. McGINTY, ESQ.**
**OFFICE OF CORPORATION COUNSEL**    **JESSICA M. McKEE, ESQ.**
233 East Washington Street
City Hall
Syracuse, New York 13202
Attorneys for Plaintiff

**SMITH, SOVIK, KENDRICK &**          **SUZANNE LEHMAN FRANCIS, ESQ.**
**SUGNET, P.C.**                              **STEVEN W. WILLIAMS, ESQ.**
250 South Clinton Street
Suite 600
Syracuse, New York 13202-1252
Attorneys for Plaintiff

**HAYNES & BOONE, LLP**                 **JONATHAN D. PRESSMENT, ESQ.**
30 Rockefeller Plaza - 26th Floor
New York, New York 10112
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On June 8, 2011, Plaintiff filed a complaint in New York State Supreme Court, Onondaga County, alleging causes of action for breach of contract and negligence. On July 1, 2011,

Defendant removed the action to this Court pursuant to 28 U.S.C. § 1446, asserting that the Court possesses jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a) by virtue of the fact that complete diversity exists between the parties and the amount in controversy exceeds $75,000. On July 8, 2011, Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the complaint is time barred and that it fails to state any *prima facie* claims for relief. Thereafter, on July 21, 2011, Plaintiff filed a motion to remand the action back to state court.

Currently before the Court is Plaintiff's motion to remand this action back to New York State Supreme Court, Onondaga County.

## II. BACKGROUND

Plaintiff is a municipal corporation duly organized under the laws of the State of New York, with its principal place of business located at City Hall, 233 East Washington Street, Syracuse, New York 13202. *See* Dkt. No. 1-3 at ¶ 1. Defendant is a limited liability company organized under the laws of the State of Texas, with its principal place of business located at 2500 City West Boulevard, Suite 900, Houston, Texas 77042. *See id.* at ¶ 2.

In or about February of 1995, Plaintiff contracted with Armored Motor Service of America, Inc. ("AMSA") for the collection of money from Plaintiff's single space parking meters located throughout the City of Syracuse. *See id.* at ¶ 6. Plaintiff contracted with AMSA again in 2000 for the same services. *See id.* at ¶ 7. "Sometime in 2003, AMSA merged with and/or was bought by [Defendant] and [Defendant] took over responsibility for collecting [Plaintiff's] parking meter money." *See id.* at ¶ 8. According to the complaint, when Defendant and AMSA merged, Defendant "assumed all of AMSA's liabilities under the aforementioned meter collection contracts

with [Plaintiff]." *See id.* at ¶ 9. Plaintiff claims that Defendant retained the majority of AMSA's employees after this agreement. *See id.* at ¶ 10.

Eventually, Defendant submitted additional bids to handle Plaintiff's parking meter collection work in 2004, 2006 and 2010, and was awarded contracts with Plaintiff for each of those bids. *See id.* at ¶ 12.

From 1998 through 2010, Plaintiff claims that Sean McGuigan, first AMSA's and then Defendant's employee, stole coins from Plaintiff's parking meters with the assistance of a third party, Ronald Mancuso. *See id.* at ¶ 15. Plaintiff claims that Mr. McGuigan was Defendant's only or primary coin collector assigned to collect from its meters during the relevant time period. *See id.* at ¶ 17. Plaintiff alleges that it lost approximately $2,900,000 in revenue as a result of Mr. McGuigan's theft. *See id.* at ¶¶ 33, 44. Beginning in 2005, Plaintiff began phasing out the individual parking meters and replaced them with computerized parking stations, which allowed Plaintiff to track the exact amount of money deposited by a customer in the parking station at any given time. *See id.* at ¶¶ 34, 36. Plaintiff noticed that, as a result of phasing out the individual meters, revenues from its parking meters began to increase in 2006. *See id.* at ¶ 37. Thereafter, in February of 2010, the Federal Bureau of Investigation informed Plaintiff that Mr. McGuigan and Mr. Mancuso had stolen money from its parking meters. *See id.* at ¶ 38.

Plaintiff commenced this action on June 8, 2011 in New York State Supreme Court, Onondaga County. In its complaint, Plaintiff asserts seven causes of action against Defendant. These causes of action include (1) breach of contract (pertaining to Defendant's purported contractual liability for the loss or theft of the coins); (2) breach of contract (pertaining to Defendant's contractual liability for "failing to safeguard the key used to open the coin collection cart as required by the contract"); (3) negligence (pertaining to Defendant's failure to "implement

3

and/or impose reasonable safeguards to protect the money"); (4) negligence (pertaining to Defendant's failure to "use reasonable care in collecting, safekeeping, and/or delivering plaintiff's money"); (5) negligence (pertaining to Defendant's failure "to properly supervise McGuigan"); (6) negligence (pertaining to Defendant's "negligent retention of McGuigan"); and (7) negligence (pertaining to Defendant's "negligent entrustment" of the collection cart key to Mr. McGuigan). *See id.* at ¶¶ 39-78.

Although not named in the caption of the complaint, Plaintiff also asserted two breach of contract and five negligence causes of action against AMSA, which parallel the claims asserted against Defendant. *See id.* at ¶¶ 79-118. Defendant asserts, and Plaintiff does not appear to argue otherwise, that AMSA was never "properly joined and served" with the complaint.

### III. DISCUSSION

Plaintiff raises several grounds in support of its motion to remand. Specifically, Plaintiff argues that (1) "Defendant AMSA's exclusion from the caption was a simple, clerical mistake and not a fatal error that deprives this Court of its power to determine jurisdiction and the propriety of removal[;]" (2) AMSA's status as an inactive corporation is irrelevant to the Court's analysis since it last transacted business in New York State; and (3) "[a]n issue of fact exists as to whether defendant Loomis assumed the rights and responsibilities of defendant AMSA; therefore, defendant AMSA must remain a party to the action thereby defeating Loomis' claim of complete diversity." *See* Dkt. No. 10-2 at 5-7.[1] In response, Defendant argues that (1) complete diversity exists because AMSA was never "properly joined and served;" (2) AMSA is an unnecessary and

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

dispensable party with no stake in the litigation; and (3) Plaintiff is unable to state a valid claim against AMSA.  *See* Dkt. No. 15 at 11-17.

A.    **Standard of review**

A defendant may remove to federal court "'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'"  *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 309-10 (2d Cir. 2005) (quoting 28 U.S.C. § 1441(a)).  However, once a case has been removed, it must be remanded "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'"  *Id.* at 310 (quoting 28 U.S.C. § 1447(c)).  Where, as here, jurisdiction is asserted by a defendant in a removal petition, the defendant bears the burden of establishing that removal is proper.  *See Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citations omitted).  If there are any doubts as to removability, they are resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of the states."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (citation omitted).

B.    **Substance over form**

Plaintiff claims that its exclusion of AMSA "from the caption was a simple, clerical mistake and not a fatal error that deprives this Court of its power to determine jurisdiction and the propriety of removal."  *See* Dkt. No. 10-2 at 5.  Plaintiff claims that the body of the complaint makes clear that it intended to sue both Defendant and AMSA.  *See id.* at 5-6.

Rule 10(a) of the Federal Rules of Civil Procedure requires that every pleading must "contain a caption setting forth . . . the title of the action." Fed. R. Civ. P. 10(a).  The title must

5

contain "the name of the first party on each side with an appropriate indication of other parties." *Id.*

"The purpose of Rule 10(a) is to provide 'clear notice as to the parties in an action.'" *E.E.O.C. v. Int'l Ass'n of Bridge, Structural, & Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 525 (S.D.N.Y. 2001) (quoting *Rosasa v. Judson River Club Rest.*, 1997 WL 316719, at *2 (S.D.N.Y. June 10, 1997)). "However, 'the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim.'" *Id.* (quoting *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F. Supp. 104, 109 (E.D.N.Y. 1995)) (other citation omitted). "'The caption, pleadings, service of process and other indications of the intent of the pleader, are evidence upon which a district court will decide, in cases of doubt, whether an entity has properly been made a party to a lawsuit.'" *Id.* (quotation omitted).

In the present matter, although Plaintiff failed to include AMSA in the complaint's caption, AMSA is mentioned throughout the body of the complaint. In fact, Plaintiff has asserted seven causes of action against AMSA for both breach of contract and negligence.

As such, the Court finds that, despite AMSA's omission from the complaint's caption, Plaintiff clearly intended to include AMSA as a defendant in this action. Therefore, this Court will only retain jurisdiction over this matter if (1) AMSA is not a citizen of New York, (2) Plaintiff's failure to serve AMSA with the complaint is determinative for purposes of determining jurisdiction under 28 U.S.C. § 1441, or (3) AMSA was fraudulently joined as a party so as to deprive the Court of jurisdiction.

C.     **Citizenship of the parties**

Defendant based its removal on diversity jurisdiction pursuant to 28 U.S.C. § 1332. It is well settled that to invoke diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity of citizenship. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). In other words, the court lacks diversity jurisdiction if any plaintiff is a citizen of the same state as any defendant. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005). For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it is incorporated and the state where it has its principal place of business. *See Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) (citing 28 U.S.C. § 1332(c)(1)).

To determine whether diversity jurisdiction exists, courts look to the citizenship of the parties at the time the action was commenced. *See id.* When a corporation is inactive at the time the suit was filed, its principal place of business is considered to be the state where the corporation last transacted business. *See Circle Indus. USA. Inc. v. Parke Const. Group, Inc.*, 183 F.3d 105, 108 (2d Cir. 1999) (citing *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 907 (2d Cir. 1996); *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 141 (2d Cir. 1991)).

It is undisputed that Plaintiff is a citizen of New York and that Defendant is a citizen of Texas. Moreover, the parties do not dispute that AMSA was a New York corporation, but that it has been "inactive" since approximately September 30, 2003, when Defendant entered into an "Asset Purchase Agreement" with AMSA. *See* Dkt. No. 15 at 8 (citing Pressment Decl., Ex. A, ¶¶ 8-11; Ex. D); *see also* NYS Department of State, Division of Corporations Entity Information, http://www.dos.state.ny.us/corps/bus_entity_search.html (last visited December 15, 2011)

(providing that Armored Motor Service of America, Inc. became inactive on September 30, 2003 because it "Merged Out").  Further, Defendant does not dispute that AMSA conducted business in New York while it was an active New York corporation or that it last conducted business in New York before becoming inactive through the execution of the 2003 agreement with Defendant.  *See* Dkt. No. 15 at 8-9.

As such, based on the parties representations, the Court finds that AMSA is a citizen of New York for diversity jurisdiction purposes.

**D.    Failure to serve AMSA**

Defendant claims that, "[b]ased on the affidavit of service filed with the court, the only defendant properly 'joined and served' as of the date of removal was – and continues to be – Loomis." *See* Dkt. No. 15 at 11.  Therefore, Defendant claims that, since AMSA was not properly "served and joined," the Court should not consider it when determining if diversity of citizenship exists.  *See id.*

In *Pullman Co. v. Jenkins*, 305 U.S. 534 (1939), the Supreme Court held that the presence of a local defendant, whether served with the complaint or not, defeats removal jurisdiction.  *See Pullman Co.*, 305 U.S. at 539-41.  In 1948, however, Congress amended the removal statute relied on in *Pullman*.  Pursuant to the current removal statute found at 28 U.S.C. § 1441(b), "[a]ny other such action shall be removeable only if none of the parties in interest *properly joined and served as defendants* is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).  Defendant contends that, under the "properly joined and served" language of the amended statute, a defendant seeking removal need only establish that those defendants who have been properly joined and served are not citizens of the state in which the action is brought.

8

Thus, Defendant claims that the presence of AMSA as an unserved defendant does not prevent removal.

Contrary to Defendant's assertions, the Court may not ignore an unserved defendant when determining whether removal was proper. In *Pecherski v. General Motors Corp.*, 636 F.2d 1156 (8th Cir. 1981), the Eighth Circuit held that, "[d]espite the 'joined and served' provision of section 1441(b), the prevailing view is that the mere failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal." *Pecherski*, 636 F.2d at 1160 (citations omitted). The courts in the Second Circuit to have addressed this question have generally reached the same conclusion. *See, e.g., Gee Chan Choi v. Jeong-Wha Kim*, No. 04-CV-4693, 2006 WL 3535931, *10 n.8 (E.D.N.Y. Dec. 7, 2006) (citations omitted); *Worthy v. Schering Corp.*, 607 F. Supp. 653, 655-56 (E.D.N.Y. 1985) (citing *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984); *Sands v. Geller*, 321 F. Supp. 558, 562 (S.D.N.Y. 1971)).[2]

Accordingly, the Court finds that Plaintiff's failure to serve AMSA does not permit the Court to ignore this unserved defendant in determining the propriety of removal. Since Defendant and AMSA are both New York citizens for diversity purposes, this matter must be remanded unless Defendant has established that AMSA was fraudulently joined in order to defeat diversity.

---

[2] The Court notes that some courts in this Circuit have reached the opposite conclusion and held that "removal of a diversity case is permissible 'where an in-state defendant has not been served by the time the removal petition is filed.'" *Deveer v. Government Employees Ins. Co.*, No. 07-CV-4437, 2008 WL 4443260, *4 (E.D.N.Y. Sept. 26, 2008) (quotation and other citations omitted). For purposes of the present motion, however, the Court has assumed that an unserved defendant must be considered for purposes of determining the propriety of removal.

### E.    Fraudulent joinder

"To demonstrate that a non-diverse defendant has been fraudulently joined to defeat diversity, a defendant must show, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings (a claim not made here), or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 393 (S.D.N.Y. 2009) (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *Whitaker*, 261 F.3d at 207; *Pampillonia*, 138 F.3d at 461). "'Even if non-diverse defendants are joined solely to prevent removal to federal court, fraudulent joinder is not shown if the plaintiff does in fact have a valid claim against the non-diverse defendants.'" *Id.* (quoting *Brown ex rel. Brown v. Noxubee Gen. Hosp. (In re Zyprexa Prods. Liab. Litig.)*, No. 08-CV-3249, 2008 WL 4561628, *3 (E.D.N.Y. Oct. 10, 2008)). "'The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff.'" *Id.* (quoting *Pampillonia*, 138 F.3d at 461) (other citation omitted).

"'[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law.'" *Id.* at 393-94 (quoting *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006)) (other citation omitted).  "That is, '[e]ven though federal law applies to the question of fraudulent joinder, the ultimate question is whether . . . state law might impose liability on the facts involved.'" *Id.* at 394 (quoting 16 James Wm. Moore, et al., Moore's Federal Practice § 107.14[2][c][iv][C] (3d ed. 2003)).  "Furthermore, courts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." *Id.*

(citations omitted); *see also Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 471-72 (S.D.N.Y. 2006) (holding that, "[b]ecause the purpose of fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims, [the court] will refer to the state pleading standards as they have been applied by state courts to similar claims"). As such, a plaintiff's motion to remand should be denied where "there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998); *Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88-90 (S.D.N.Y. 1996) (denying remand where the inclusion of the non-diverse defendant was due to fraudulent joinder).

In the present matter, Plaintiff filed its complaint in New York State Supreme Court on June 6, 2011. Plaintiff admits in the complaint that, "in 2003, AMSA merged with and/or was bought by [Defendant] and [Defendant] took over responsibility for collecting [Plaintiff's] parking meter money." *See* Dkt. No. 1-3 at ¶ 8. Further, Plaintiff admits that when AMSA and Defendant merged, "[Defendant] assumed all of AMSA's liabilities under the aforementioned meter collection contracts with [Plaintiff]." *See id.* at ¶ 9; *see also* Dkt. No. 1-3 at ¶ 11 (claiming that "[w]hen AMSA merged with and/or was bought by [Defendant], [Defendant] assumed all of AMSA's rights and responsibilities under the aforementioned meter collection contracts with [Plaintiff]"). The complaint also makes clear that, subsequent to this merger, Defendant submitted bids in 2004, 2006 and 2010 to continue to handle Plaintiff's parking meter collections and was subsequently awarded contracts based on those bids. *See id.* at ¶ 12. As such, it is clear, based on the face of the complaint, that AMSA was no longer performing under its contract relating to Plaintiff's parking meters as of 2003.

Although Plaintiff appears to argue otherwise, the case law makes clear that a court may consider a statute of limitations defense in determining whether a defendant has been fraudulently joined in order to destroy complete diversity. *See, e.g., Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009) (holding that "[w]e, along with our sister circuits, have recognized that a statute of limitations defense is properly considered in connection with a fraudulent joinder inquiry" (citations omitted)); *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (holding that "the statute of limitations defense is a permissible means by which to establish fraudulent joinder in order to remove an action on diversity grounds" and noting that this defense does not go to the merits of the plaintiff's claims, "[i]nstead, it 'virtually admits the validity of the cause of action and the plaintiff's right to collect upon it, but asserts that the plaintiff waited too long to pursue the cause of action'" (quotation omitted)).

It is well-settled that a six-year limitations period governs breach of contract claims in New York and that this statute of limitations begins to run from the day the contract was allegedly breached, not the day that the breach was discovered or should have been discovered. *See ABB Indus. Systems, Inc. v. Prime Technology, Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (citing *Ely-Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 402-04, 599 N.Y.S.2d 501, 502-04, 615 N.E.2d 985, 986-88 (1993); *National Life Ins. Co. v. Frank B. Hall & Co. of New York,* 67 N.Y.2d 1021, 1023-24, 503 N.Y.S.2d 318, 319, 494 N.E.2d 449, 450 (1986)). In the present matter, Plaintiff's contract with AMSA was breached, if at all, while AMSA was still an active corporation, *i.e.*, prior to its 2003 sale/merger with Defendant. As such, the statute of limitations for Plaintiff's breach of contract claim against AMSA would have expired at some point in 2009,

making this claim untimely.[3]  Even if the Court were to assume that AMSA had some obligation under the contract after it was purchased by Defendant, any such obligations would have ended in 2004 when Plaintiff entered into a new contract with Defendant.

Similarly, Plaintiff's negligence claims against AMSA are also time barred.  Negligence claims in New York are governed by a three-year statute of limitations.  *See McCormick v. Favreau*, 82 A.D.3d 1537, 1539 (3d Dep't 2011) (citation omitted).  "It is well established that a tort claim accrues when it 'becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint.'"  *Bond v. Progressive Ins. Co.*, 82 A.D.3d 1318, 1320-21 (3d Dep't 2011) (quotation omitted).  "Accordingly, when damage is an essential element of a tort, the claim does not accrue at the time of the defendant's wrongful act or the plaintiff's discovery of the injury, but when the harm is sustained."  *Id.* at 1321 (citations omitted).  For example, several courts in New York have previously held that, in a cause of action arising out of an insurance broker's breach of its duty to procure the coverage requested by an insured, the claim "did not accrue at the time of the broker's breach, but when the insured's vehicle was involved in an accident for which the coverage was inadequate."  *Id.* at 1320 (citations omitted).

In the present matter, Plaintiff allegedly sustained injuries from AMSA's negligence from 1998 through 2003.  Unlike the example provided above where the damage did not become realized until after the insured was involved in the automobile accident for which the insurance broker procured inadequate coverage, Plaintiff's injuries were realized upon each alleged theft;

---

[3] The Court notes that Plaintiff did not plead facts which would support a fraud claim against AMSA.  Therefore, Plaintiff cannot avail itself of New York's six-year statute of limitations for fraud causes of action, which "must be brought within six years from the date of the fraud or two years from the time that a plaintiff discovered or could have, with reasonable diligence, discovered the fraud."  *Adams Book Co. v. Ney*, No. 97-CV-4418, 2002 WL 31946713, *6 (E.D.N.Y. Dec. 3, 2002) (citations omitted); *see also ABB Indus. Systems, Inc.*, 120 F.3d at 360 (citing N.Y. Civ. Prac. L. § 213(8)).

and, therefore, its claims accrued against AMSA between 1998 and 2003.  As such, Plaintiff's negligence claims against AMSA are clearly precluded by New York's three-year statute of limitations.

Based on the foregoing, the Court finds that Plaintiff's motion to remand should be denied because "there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 460-61.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to remand (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall reset the response and reply deadlines relevant to Defendant's motion to dismiss (Dkt. No. 5); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 15, 2011
       Albany, New York

                               Mae A. D'Agostino
                               U.S. District Judge